# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LOU BACHRODT CHEVROLET CO. and BACHRODT MOTORS, INC., | )<br>)<br>) |
| Plaintiffs, | ) No. 12 C 7998<br>) |
| v. | ) Judge John J. Tharp, Jr.<br>) |
| GENERAL MOTORS LLC, | )<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

The plaintiffs in this case (collectively, "Bachrodt") are two affiliated Illinois motor vehicle dealers. They are General Motors dealerships; one sells Chevrolets and one sells Buicks. During GM's bankruptcy proceedings, GM identified certain dealers—Bachrodt Chevrolet among them—whose dealer relationships could have been rejected under federal bankruptcy law and notified them to wind down their businesses within a specific time period. Bachrodt Chevrolet entered into a "Wind-Down Agreement" with GM in June 2009 that required it to cease its Chevrolet dealership operations no later than October 31, 2010.

Bachrodt Chevrolet was just one of thousands of dealerships slated for termination during the bankruptcy proceedings of GM and Chrysler Corporation. Congress responded to these mass dealer terminations by enacting, in December 2009, Section 747 of the Consolidated Appropriations Act of 2010, which provided terminated dealers the right to arbitrate the question of whether the termination was warranted based on a balancing of various enumerated factors. *See* Pub. L. No. 111-117 § 747(d), 123 Stat. 3034, 3220-21 (2009). *See also generally* J. Michael Morgalis, *Unlawful Reprieve: An Analysis of the Constitutionality of Section 747 of the Consolidated Appropriations Act*, 79 UNIV. OF CINCINNATI L. REV. 825 (2010). Section 747

effectively abrogated the wind-down agreements that terminated dealers had entered into with GM (at least for those who wanted to remain as GM dealers).

Bachrodt Chevrolet took advantage of the opportunity provided by Section 747 and filed a demand for arbitration. Ultimately, however, Bachrodt Chevrolet and GM entered into a settlement agreement to resolve the termination dispute before any arbitration ruling was issued. That agreement provided, among other terms, that Bachrodt Chevrolet would continue as a GM dealer and authorized the Buick-GMC operations of Bachrodt Motors to relocate to Bachrodt Chevrolet's dealership location, so long as the dealers used "signage, image and showroom separation reasonably acceptable to GM." Settlement Agreement ¶ 20. This dispute arises because, to date, GM has not permitted Bachrodt Motors to relocate the Buick-GMC dealership to Bachrodt Chevrolet's location; the substance of the parties' dispute about that issue is not germane to resolution of the remand motion and so is not addressed here.

Seeking to compel GM to allow the relocation, the plaintiffs filed two Notices of Protest with the Illinois Motor Vehicle Review Board ("MVRB" or "Board") in August 2012. Within 30 days of its receipt of these Notices, GM filed a Notice of Removal pursuant to 28 U.S.C. § 1441, purporting to remove the MRVB proceeding to this Court and asserting that this Court has subject matter jurisdiction over the plaintiffs' claims under 28 U.S.C. § 1331 (federal question jurisdiction), § 1332 (diversity jurisdiction), and § 1334 (bankruptcy jurisdiction). In response, the plaintiffs filed this motion to remand the case to the MVRB. They argue that removal was improper because the MVRB is not a state "court" from which a case can be removed pursuant to § 1441 and that this Court lacks subject matter jurisdiction over the claims they have asserted in any event.

The parties have each focused their arguments first on the question of whether the MVRB is a "court" within the meaning of the removal statute, but that puts the cart before the horse. The Court's jurisdiction to hear the claims that GM purports to have removed should be established before the Court addresses that argument, which does not itself appear to be "jurisdictional" in nature. The Seventh Circuit has repeatedly held that defects in removal procedures are non-jurisdictional and, therefore, waivable. *See, e.g., Morris v. Nuzzo*, ---F.3d ---- , 2013 WL 2248977, at *3 (7th Cir. May 23, 2013) (forum defendant rule is a matter of removal procedure, not jurisdiction); *GE Betz, Inc. v. Zee Co., Inc.*, --- F.3d ---- 2013 WL 1846541, at *16 (7th Cir. May 3, 2013), (unanimous consent rule is a matter of removal procedure, not jurisdiction, and may be waived); *Hurley v. Motor Coach Indus., Inc.*, 222 F.3d 377, 378-80 (7th Cir. 2000) (examining in detail the rationale for distinguishing errors in removal procedure from jurisdictional defects). Before the Court addresses the question of whether GM's removal was procedurally correct, the jurisdiction of the Court to enter *any* orders affecting the case should be established. Accordingly, the Court first addresses the question of subject matter jurisdiction.

## I. Subject Matter Jurisdiction.

There is no need to tarry long in addressing the parties' arguments about whether the Court has jurisdiction under § 1331 or § 1334. GM's arguments notwithstanding, this dispute, concerning enforcement of a contract—the Settlement Agreement—between GM and its dealers,[1] does not arise under "the Constitution, laws, or treaties of the United States" as required by § 1331, and does not arise under title 11 or arise in or relate to a case under title 11, as required by § 1334. *See* 28 U.S.C. §§ 1331, 1334(b); *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, (2005) ("arising under" jurisdiction exists over cause

---

[1] *See infra* note 4.

of actions that are "created by federal law" and "state-law claims that implicate significant federal issues"); *Bd. of Governors of Fed. Reserve Sys. v. MCorp Fin. Inc.*, 502 U.S. 32, 41 (1991) (§ 1334(b) "authorizes a district court to exercise concurrent jurisdiction over certain bankruptcy-related civil proceedings that would otherwise be subject to the exclusive jurisdiction of another court").

GM's efforts to tie this dispute to its bankruptcy proceedings and to the arbitration authorized by Section 747 fail, because (as the plaintiffs argue), Section 747 and the bankruptcy proceeding are "nothing more than background to the dispute." They explain how the parties came to a contractual agreement, but neither the Bankruptcy Court's wind-down orders nor the Section 747 arbitration proceedings required the parties to enter into their Settlement Agreement. That agreement was a voluntary bargain struck by the parties—a species of private contract, nothing more.

GM's argument that federal jurisdiction exists because the Settlement Agreement resolved federal issues is plainly wrong; the nature of the underlying dispute does not vest federal courts with jurisdiction over claims that one party or the other breached a settlement agreement. A dispute involving the terms of a settlement agreement is a dispute under state contract law, not federal law—even where the settlement agreement resolved federal litigation based on federal question jurisdiction. That is why the Seventh Circuit has held repeatedly that "a district court does not have jurisdiction to enforce a settlement agreement merely because the agreement was the premise of the court's dismissal of the [federal] suit that the agreement settled." *Shapo v. Engle*, 463 F.3d 641, 643 (7th Cir. 2006). *See also, e.g., Lynch, Inc. v. Samatamason Inc.*, 279 F.3d 487, 489 (7th Cir. 2002) ("A settlement agreement . . . is enforced just like any other contract. [If] the parties are not diverse, any suit to enforce the settlement

4

agreement . . . would have to be brought in state court even though the settlement was of federal as well as state claims."); *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 381 (1994) ("[T]he suit involves a claim for breach of a contract, part of the consideration for which was dismissal of an earlier federal suit. No federal statute makes that . . . the basis for federal–court jurisdiction over the contract dispute."). Absent diversity jurisdiction, neither the dealerships nor GM could sue in federal court for breach of their Settlement Agreement, so there is no federal question (or bankruptcy) jurisdiction over this dispute about whether GM has breached a duty to permit the relocation.

That leaves the question of diversity jurisdiction. There is no dispute that complete diversity exists between the parties,[2] but the plaintiffs assert that the amount in controversy requirement for the exercise of diversity jurisdiction is not met because they are not seeking damages; instead, they seek an order from the MVRB requiring GM to permit the relocation. Essentially, then, the plaintiffs seek an equitable remedy—specific performance of a contractual right—and as GM points out, the Seventh Circuit has held that such a remedy is "in substance no different from any other request for an injunction or declaratory judgment. In suits seeking the equitable remedies of an injunction or a declaratory judgment, the amount in controversy is determined by the value to the plaintiff (or petitioner) of the object of the litigation." *America's*

---

[2] Bachrodt Chevrolet and Bachrodt Motors are citizens of Illinois; each is incorporated, and has its principal place of business, in Illinois. General Motors LLC is a Delaware limited-liability company, the sole member of which is General Motors Holdings LLC, another Delaware limited-liability company. The sole member of GMH LLC is General Motors Company, which is incorporated in Delaware and has its "nerve center," and therefore its principal place of business, in Michigan. Accordingly, GM is a citizen of both Delaware and Michigan, but not Illinois, and there is diversity of citizenship between the parties. *See* 28 U.S.C. § 1332; *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010) (adopting the "nerve center" test to determine a corporation's "principal place of business," and noting that it "should normally be the place where the corporation maintains its headquarters").

*MoneyLine, Inc. v. Coleman,* 360 F.3d 782, 786 (7th Cir. 2004) (citing *Hunt v. Washington State Apple Adver. Comm'n,* 432 U.S. 333, 347 (1977)).

And it is clear that the object of the plaintiffs' claims—relocation of the Buick-GMC dealership—is worth substantially more to the plaintiffs than the $75,000 threshold requirement for the exercise of jurisdiction based on diversity. In their MVRB petitions, the plaintiffs aver that they have invested, or will invest, more than $1 million in a new facility to house both dealerships; that fact alone belies any argument that relocation, the object of this dispute, does not involve stakes greater than $75,000, as an investment of that amount would make no sense if the *total* (as opposed, say, to the annual) anticipated benefits of that investment would not exceed 7.5% of the investment. The entire point of the relocation is, as their MVRB pleadings strongly suggest, to sell more cars and trucks, and the marginal increase in sales resulting from relocation would not have to be substantial to exceed the modest jurisdictional threshold. And since a case fails to satisfy that threshold only where it appears "legally impossible" that the amount at stake exceeds that threshold, *Grinnell Mut. Reins. Co. v. Haight*, 697 F.3d 582, 585 (7th Cir. 2012), the plaintiffs' assertion that the Court lacks diversity jurisdiction to adjudicate their claims because the amount in controversy is inadequate lacks merit. The Court therefore concludes that it has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a).

## II. Propriety of Removal

That this Court has jurisdiction over the plaintiffs' claims, however, does not necessarily mean that those claims were subject to removal from the MVRB. Section 1441(a) of Title 28 authorizes removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." The removal statute does not define or describe what constitutes a "State court," but the Seventh Circuit has instructed that for removal purposes, "the

title given to a state tribunal is not determinative; it is necessary to evaluate the functions, powers, and procedures of the state tribunal and consider those factors along with the respective state and federal interests in the subject matter and in the provision of a forum." *Floeter v. C.W. Transport, Inc.*, 597 F.2d 1100, 1102 (7th Cir. 1979). This two-part inquiry has come to be known as the "functional test" for removal from a state administrative agency (distinguishing it from the more formalistic approach some other circuits have more recently adopted in eschewing removal from any sort of state "agency").[3] It remains applicable in the Seventh Circuit. *See Wirtz Corp. v. United Distillers & Vinters of N. Am., Inc.*, 224 F.3d 708, 710 (7th Cir. 2000) ("The district court endeavored to apply [the *Floeter* test]. We shall endeavor to do the same."). Both of *Floeter*'s requirements—"courtness" and stronger federal interests—must be met in order to remove a proceeding before a state agency, and any doubts as to the propriety of removal must be resolved in favor of the state forum. *Id.* at 715 (Ripple, J., concurring) (citing Circuit precedent holding that doubts must be resolved against removal).

Review of § 29 of the Illinois Motor Vehicle Franchise Act quickly reveals that, in conducting hearings on protests lodged by parties subject to the MVRB's jurisdiction, the Board employs many procedures that are similar to those of a judicial court. GM's opposition brief provides a more exhaustive listing (Resp. at 6-7), but in summary the statute provides the MVRB with the authority to initiate and conduct hearings that include most, if not all, of the trappings of contested judicial proceedings. *See* 815 ILCS 710/29. Such hearings may include the presentation of sworn testimony and other evidence before hearing officers who are attorneys empowered to make findings of fact and rulings of law, the conduct of discovery and issuance of

---

[3] *See, e.g., Porter Trust v. Rural Water Sewer and Solid Waste Management Dist. No. 1,* 607 F.3d 1251, 1254, 55 (10th Cir. 2010) (collecting cases in which courts called "functional" test into question).

subpoenas, motion practice, settlement processes, the creation of a record and rights of appeal, and the assessment of sanctions and the award of fees and costs. *Id.*

There are, however, some substantial differences between the hearing powers of the MVRB and those of a court. Most significantly, the MVRB lacks the power to enforce its own orders; to compel the attendance of witnesses and production of documents, the Board must seek an order from the circuit court. Further, the MVRB has no authority to empanel a jury or generally to award damages (though GM points out that the Board is empowered under § 9(c) of the Act to require the payment of "reasonable compensation" in the context of nonrenewal or termination of a franchise). The Board's decisions, moreover, are subject to judicial review not as trial court opinions are but rather under the standards and procedures applicable to administrative decisions pursuant to the Administrative Review Law, 735 ILCS 5/3-101 *et seq.*

Bachrodt argues that these differences distinguish the MVRB from a judicial court, but the point is debatable. As to the lack of enforcement power, for example, the same could have been said of the agency in question in *Floeter* (the Wisconsin Employment Relations Commission, or "WERC"), but the Seventh Circuit dismissed the relevance of that distinction when it observed that "the WERC's need to resort to the court system for enforcement of its orders does not change the essentially judicial character of the proceedings." 597 F.2d at 1102. Moreover, the standards for judicial review of administrative decisions in Illinois do not differ materially from the standards that govern many trial court rulings on appeal—*see, e.g., ASFCME, Council 31 v. St. Labor Relations Bd.*, 216 Ill. 2d 569, 577, 839 N.E.2d 479, 485 (Ill. 2005)—so the requirement for judicial review under the Administrative Review Law does not appear to provide a basis to conclude that the MVRB is not a "court" for removal purposes. And as for jury trials and damages, courts conduct many types of proceedings without juries, and

many judicial "courts" have jurisdictional limits on the remedies that they are authorized to provide, so the availability of a jury and the power to impose damages generally cannot be dispositive either.

Bachrodt points as well to the powers vested in the MVRB that exceed the powers of a traditional "court," arguing that such "super" powers also distinguish the MVRB from a court for removal purposes. In pressing this argument, Bachrodt relies heavily on *Wirtz*, where, it maintains (Brief at 4), the Seventh Circuit held that the Illinois Liquor Control Commission ("ILCC") could not be deemed a "court" for removal purposes because (among other reasons) "the legislature bestowed on the ILCC, an executive branch agency, powers which no other regular court possesses." 224 F.3d at 716. As GM points out, however, that was not the *Court's* holding in *Wirtz*; rather, it was the opinion expressed by Judge Ripple in concurring in the Court's judgment. Indeed, Judge Ripple's opinion expressly acknowledges that the majority opinion in *Wirtz* was not founded upon a determination that the ILCC was not functionally a "court," but rather on the second prong of the *Floeter* analysis, namely that the state's interests in the dispute in that case substantially outweighed the federal interest in providing diversity jurisdiction (the only federal interest that was arguably at stake in the case). Although the majority opinion considered the question, it did not make any definitive statements as to whether the ILCC met the functional characteristics of a court; its entire discussion of that issue was prefaced by the phrase, "It can be argued." *See id.* at 712.

In this Court's view, the fact that the Illinois legislature vested the MVRB with some powers beyond the scope of a traditional court has little relevance to the question of whether, in adjudicating a particular dispute, it is functioning as a state "court" within the meaning of the removal statute. If extra-judicial powers were (as the plaintiffs read Judge Ripple's *Wirtz*

concurrence to suggest) dispositive of the removal question, few (if any) administrative proceedings could ever be removed to federal court; most administrative agencies are tasked with executive and legislative powers that the judiciary does not possess, yet removals of administrative proceedings from such agencies are hardly uncommon. Perhaps they should be, but that is a policy question (see above) that is not for this court to decide. It is enough here to note that no panel of the Seventh Circuit has suggested that an agency's extra-judicial powers exclude all administrative proceedings conducted by that agency from the operation of the removal statute. To the contrary, in affirming the removal in *Floeter*, the Court of Appeals expressly acknowledged that "the WERC's jurisdiction is much broader than simply adjudicating actions," and cautioned that whether the agency was in fact acting as a "court" within the scope of the removal statute would have to be evaluated on a case-by-case basis. 597 F.2d at 1102. Bachrodt's categorical argument excluding agencies with extra-judicial powers from the ambit of the removal statute is simply not consistent with the Seventh Circuit's view in *Floeter*.

Though the issue is not without some doubt, the Court concludes that GM has the better of the argument with respect to the MVRB's "courtness" in the context of Bachrodt's petitions. Doubt, however, must be resolved against removal and were this issue dispositive in this case, the default rule might support remand. But ultimately the resolution of this question is not determinative, because it is plain, as it was in *Wirtz,* that the federal interests implicated by removal of this matter are substantially outweighed by the state's interests in regulating the relationships of automobile manufacturers and dealers. *See* 224 F.3d at 713 ("federal law nevertheless influences our view that the diversity jurisdiction process is outweighed by the state's interest in administering its own alcoholic beverages program"). Thus, even if the MVRB

were to pass the "courtness" test, GM's removal of this case would still fail to meet the requirements of the second prong of *Floeter*'s functional test.

Other than its interest in providing a forum to diverse litigants, it is difficult to see any significant federal interest in the adjudication of this dispute. As GM itself acknowledged in its notice of removal, in this case GM "seeks to enforce the provisions of a contract"; "the dispute here is a contract dispute."[4] Notice of Removal ¶¶ 29, 30. The contract at issue is a settlement agreement that Bachrodt and GM entered into to resolve an arbitration proceeding to which Bachrodt was entitled by virtue of the enactment of Section 747. In an effort to create the appearance of a substantial federal interest in this contract dispute, GM devotes a substantial portion of both its Notice of Removal and its brief in opposition to Bachrodt's remand motion explaining the history of the bankruptcy proceedings that prompted Congressional enactment of Section 747, but that effort is for naught. Contrary to GM's assertion (Response at 11), this case does *not* involve "arbitration rights created by federal law relating to federal bankruptcy proceedings." Federal law—specifically Section 747—provides the backdrop against which the parties negotiated a private agreement, but as already explained in rejecting GM's claim that the Court has federal question jurisdiction over this dispute, that backdrop does not transform this private contractual dispute into a federal matter. No aspect of federal law will be implicated in any way by the parties' resolution of their private dispute. With all due respect for the significance of this issue to the parties themselves, the question of the appropriate characteristics

---

[4] The Court notes that Bachrodt's position is that their petitions to the MVRB do not constitute claims brought under the Settlement Agreement (to which Bachrodt Buick is not even a party). *See* Reply at 3 n.2. The Court sees no need to resolve this aspect of the dispute in light of its view that, even construed as an action relating to enforcement of the terms of the Settlement Agreement, the matter should be remanded.

of the signage proposed for the newly combined Bachrodt Chevrolet-Buick dealership is simply not a matter of substantial federal concern.[5]

Against the absence of a substantial federal interest is weighed the state's considerable interest in regulating the relationships between automobile manufacturers and Illinois dealers. Section 1.1 of the IMVFA states expressly the Illinois legislature's determination that "the distribution and sale of vehicles within this State vitally affects the general economy of the State" and that the IMVFA was enacted "to promote the public interest and welfare." One means by which Illinois seeks to enhance the contribution of automobile sales to the welfare of the state is by establishing the MVRB and vesting it with the authority to conduct prompt hearings to resolve disputes like the one in this case, thereby "providing a convenient and expeditious tribunal to adjudicate the rights and interests of the parties." *Wirtz*, 224 F.3d at 710 (quoting *Floeter,* 597 F. 2d at 1102). As *Wirtz* illustrates, that interest outweighs the federal interest in providing a forum for diverse litigants. In *Wirtz*, the Seventh Circuit held that "the state's interest in administering its own alcoholic beverages program outweighed the federal interest in the diversity jurisdiction process," *id.* at 713, and the state's interest in regulating the distribution and sale of vehicles within the state seems comparably compelling. Retail sales of automobiles obviously constitute a significant segment of the state's economy and (like the regulation of alcohol sales, at least after the repeal of Prohibition) have traditionally and primarily been the

---

[5] This is not to suggest that there is no federal interest in the relationship between automobile manufacturers and dealers. Congressional enactment of Section 747, for example, belies that contention, as does the Automobile Dealers' Day In Court Act ("ADDCA"), 15 U.S.C. § 1221 *et seq.*, "a remedial statute enacted to redress economic imbalance and unequal bargaining power between large automobile manufacturers and local dealerships, protecting dealers from unfair termination and other retaliatory and coercive practices." *Machio v. Prestige Motors,* 37 F.3d 908, 909 (3d Cir. 1994). For reasons that are not difficult to fathom, GM does not point to this statute as support for its argument that its dispute with Bachrodt implicates a substantial federal interest.

subject of state, rather than federal, regulation. Indeed, in limiting its scope to dealerships that were "not lawfully terminated *under applicable State law* on or before April 29, 2009," Section 747 itself recognized that dealers' contracts with manufacturers are generally governed by state law. Section 747(b) (emphasis added); *see also, e.g.*, *Chrysler Group LLC v. South Holland Dodge, Inc.*, 862 F. Supp. 2d 661, 681 (E.D. Mich. 2012) (recognizing auto dealer-manufacturer relations as "a field that the States have traditionally occupied" in rejecting claim that Section 747 preempted state dealer acts).

GM has provided no basis to impeach the Illinois legislature's declaration of the importance of that interest to the state's economy and general welfare. Its argument that Illinois' interest in this dispute is negligible because the Settlement Agreement includes a choice of law provision providing that Michigan law governs the Agreement is not persuasive. Putting aside the question of whether the plaintiffs' petitions before the MVRB actually require interpretation and enforcement of the Settlement Agreement (*supra*, note 4), the Settlement Agreement acknowledges that it is a supplement to the franchise agreement between the parties. The IMVFA applies "to all written . . . agreements between a manufacturer . . . [and] a motor vehicle dealer including, but not limited to . . . the franchise agreement." 815 ILCS 710/8. Thus, there may be competing provisions that affect the choice of law applicable to interpretation and enforcement of the Settlement Agreement. The Court intends no comment on the proper resolution of the choice-of-law issue; for purposes of the question before this Court, it suffices to note that the question of the choice of law is not as straight forward as GM suggests, and resolution of that issue (by any tribunal) will likely require consideration of Illinois' interests in regulating the relationships between auto manufacturers and dealers within its borders. And in any event, GM's choice-of-law argument ignores Illinois' interest in providing a tribunal to

expeditiously resolve manufacturer-dealer disputes in a "convenient and expeditious" manner regardless of the source of the substantive law that controls resolution of the dispute.

\* \* \*

Concluding, then, that the State's interests in the instant dispute substantially outweigh any federal interest, and bearing in mind that any doubts as to removability should be resolved in favor of remand, the Court concludes that this matter should be remanded to the Illinois MVRB.

Entered: July 15, 2013

John J. Tharp, Jr.
United States District Judge